LOTTINGER, Judge.
This suit arises out of an accident which occurred on November 27, 1948, at about 8:30 P. M. in the Town of Ponchatoula, Louisiana. It is alleged that the petitioner, Edward L. Landry, while walking in a westerly direction on the.south shoulder of Pine Street was struck by a taxi cab owned by Hessie P. Holden. Joined as defendants also are Dotsey Gates, the driver of the cab, and The Travelers Indemnity Company, Holden’s liability insurer.
The defendants admitted in their answer that Gates was acting within the scope 'and course of his employment and that plaintiff had been injured to some extent. They, denied any liability on their part, however, and alleged that plaintiff had been struck as he stepped from behind a west bound car, from which he had just alighted, directly in front of the cab and was struck not on the south shoulder as alleged, but in the middle of the street. They alleged further that plaintiff was highly intoxicated and had failed to look before crossing the street. Contributory negligence was pleaded in the alternative as a bar to recovery.
The trial judge in his written reasons for judgment found that the plaintiff had proven negligence on the part of the defendant Gates. It was also found that defendants were liable under the doctrine of last clear chance. The matter comes to this court on an appeal taken by the defendants from a judgment against all of them for the stun of $5,000 (the limit' of the in *271 surance coverage of the Travelers Indemnity Company) and against Randolph Leslie (Dotsey) Gates and Hezzie (Hessie) P. Holden for the sum of $7,200.
As stated before the situs of the accident was on Pine Street in the Town of Poncha-toula. This street runs east and west and is also U. S. Highway No. 51. The accident occurred in the block between Seventh and Eighth Streets on Pine Street. On the north side of this street there is located the Catholic Church, which faces east or Seventh Street and the school in the rear thereof towards Eighth Street, which constitutes the entire properties abutting the northern portion of said street in said block. The properties on the south side of Pine Street in said block beginning from the west or Eighth Street, is Mr. Boyter’s Esso Service Station and then Larpenter’s Service Station. It appears that these two service stations are adjoining each other and that Larpenter’s Service Station is not exactly in the center of the block but is more west of the center or nearer Eighth Street than Seventh Street. Proceeding westerly on Pine Street there is located on the northwest corner of the intersection of Pine and Eighth Street, Wilson Motor Company. It appears from the record that the blocks in the Town of Ponchatoula are 400 feet square and that the right-of-ways for the streets are 100 feet wide.
The plaintiff, just previous to the accident, had been riding with one Wickliffe Duplessis, who let him out of his car, according to the testimony of Duplessis, who was a student at Southeastern Lousiana College, directly in front of the Esso Station, that is, by the Catholic school grounds on highway 51 or Pine Street. He says further that he was near the intersection of Eighth Street when he stopped to let Landry out and it was about 25 feet from the corner.
According to plaintiff’s version he had crossed to the south side of the street and was proceeding west on the south shoulder thereof when struck. The defendants contend that plaintiff never completed crossing the street but stepped out from behind the Duplessis automobile directly into the path of the cab which was then proceeding east in its own lane of traffic. The evidence discloses that it was either raining or misty at the time..
The testimony of the plaintiff and of the driver, Gates, is, as may be expected, irreconcilable. The plaintiff repeatedly stated, even under severe cross examination, that he was struck on the south shoulder or apron of the road. Gates, on the other hand, contends that plaintiff was not on the shoulder at all, but actually walked into the cab. The only persons near the scene at the time were two' brothers, Adam and Bill McMorris, who had stopped at Larpenter’s filling station, which is located on the south side of the street. Adam McMorris stated that he had gotten out of his automobile, filled the radiator with water, returned to the driver’s seat, and preparatory to driving onto the highway looked west for approaching vehicles just in time to see plaintiff struck by the cab at a point just south of the center line of the street. The testimony of Bill McMorris, however, is entirely different. He testified that he, not his brother, had been driving and that he had gotten out to fill the radiator. • He also stated that Adam had remained in the car the entire time, that he had not finished filling the radiator at the time of the accident and that neither of them saw the actual occurrence of the accident. The trial court found, and we think correctly so, that neither had actually seen the accident and that their testimony as to where it occurred .was of no value.
There is considerable testimony in the record as to where the plaintiff’s body rested after the accident, some of defendant’s witnesses placing it astride the center line of the highway and others stating that it was on the edge of the south lane. Mr.’ Kermit J. Kraemer, Night Marshal of Ponchatoul'a, stated that he arrived just after the accident had occurred and he says that plaintiff was lying in the middle of the road, half on one side of the center line and half on the other side of said center line with his head in the south lane. He says further that plaintiff’s body *272 was lying midway between Seventh and Eighth Street on Pine Street, hut closer to Eighth than Seventh or approximately in front of the Larpenter filling station. The plaintiff was unconscious at the time and there is no testimony that he was found on the shoulder. It seems clear that plaintiff was hit by the left side of the cab. The testimony of defendants’ witnesses who arrived shortly after the accident is that the left side of the cab was dented and the left windshield broken. The most direct testimony on this point is that of Kermit J. Kraemer, the town’s Night Marshal, who stated that the comer of the fender was struck. He also stated that the hood was mashed in and that a man’s handprints could be seen thereon and also the left front headlight was broken. The plaintiff himself stated that he thought he had been struck by the left side of the cab, and that as he was struck he threw up his hands, grabbed the cab and rode for a distance before falling. The cab was found by Kraemer at an angle with its front wheels just off the south half of the paved road, and within a few feet of the body of plaintiff.
From the testimony as a whole we do not feel that plaintiff by a preponderance of the evidence, established that he was struck while walking on the shoulder. The testimony referred to above would make it appear more likely that plaintiff had never completely crossed the street and that he was struck at some point in the south lane of the street itself.
The defendants’ main defense seems to rest principally upon the contention that the plaintiff suddenly appeared from behind the Duplessis car in an intoxicated condition and walked into the cab. Du-plessis himself did not see the accident, having driven on after plaintiff had alighted from his car on the right hand side. Duplessis estimated that he had driven approximately 50 feet from the point where he had stopped to let out the plaintiff when he heard the glass shatter as the -accident occurred. The further testimony of Duplessis, however, would indicate that he had travelled more than 50 feet before the accident occurred. According to Night Marshal Kraemer the accident occurred approximately in the middle of the block between Seventh and Eighth Streets. While Duplessis seemed positive that he had travelled only 50 feet he also stated that he had reached a point west of the intersection of Eighth Street and Pine Street when he heard the crash. Mr. Duplessis was very positive in his testimony that when he stopped to let the plaintiff out, he stopped directly in front of the Esso station, that is, by the Catholic school grounds on highway 51. He says that he was near the intersection of Eighth Street and that it .was about 25 feet from the corner. He says he put him out and after he had started off, a car passed him and he had gotten somewhere around Wilson’s Motor Company when he heard glass shatter. He says he travelled 50 feet before he heard the crash. He was not directly in front of Wilson’s Motor Company, but around there. But, nevertheless, he says that he had crossed the intersection of Eighth Street.
The lower court in arriving at its conclusion placed the point of impact" approximately mid-way between Seventh and Eighth Streets or in front of Larpenter’s Service Station, which we think was the first error that the lower court fell into, and the lower court went further to say that if the impact took place in front of Larpenter’s Service Station and Duplessis had travelled into or upon the intersection of Pine and Eighth Street or near Wilson Motor Company when he heard the crash that Duplessis must have travelled some 300 to 400 feet west of the point of impact where the plaintiff was struck, and that being the case the lower court went on to say, that the plaintiff did not walk from behind Duplessis’ automobile into the east bound vehicle of the defendant, but to the contrary found that the plaintiff was crossing the street in the open and that he should have been seen by the defendant in time to avoid the accident.
We can not fully agree with the findings of fact of the lower court but are inclined to believe that the point of impact took *273 place nearer the intersection of Eighth and Pine Streets and approximately in front of the Boyter Esso Station instead of in front of the Larpenter Service Station. We do not think that the impact took place on the south shoulder of the road as is claimed by the plaintiff but are inclined to believe from the evidence that the impact took place in the south lane of traffic of said street. It is alleged and shown that the plaintiff had been drinking intoxicating liquor that day and we are inclined to believe that his memory was hazy as to the location of the impact.
Mr. Gates, the driver of defendant’s vehicle, states that the impact took place a little bit east of the intersection of Eighth and the Highway, which we are inclined to believe because taking his testimony together with that of Mr. Duplessis, it appears that after Mr. Duplessis had let the plaintiff out he had travelled some 50 feet or better or near the Wilson Motor Company when he heard the crash. We do not think that Mr. Duplessis could have heard the crash if same had taken place some 300 or 400 feet east of him, especially he moving in his car at the time. It must be remembered that there was a light mist or rain falling at the time of the accident, and it is near impossible to believe that the actual impact took place where the body of plaintiff was found on the paved road.
It is not shown in the record the speed of the defendant vehicle, therefore it is reasonable to assume that he was proceeding at a lawful rate of speed, say 25 miles per hour. We do not think that a car travelling at that speed on a wet paved road could have stopped instantly after such an impact that would have caused the breaking of two limbs of the plaintiff, but are inclined to believe that the vehicle travelled some distance after the impact actually occurred. It is to be remembered likewise, that the plaintiff stated, that when he was struck, he threw up his hands, grabbed the cab and rode for a distance before falling off. So for that reason, we are inclined to believe that the impact took place nearer the intersection of Eighth Street or approximately in front of the Boyter Esso Station and that the defendant’s car travelled some little distance before he was able to stop his car on the wet pavement. If the defendant’s car was travelling at the rate of 25 miles per hour and his brakes were in excellent condition and the road dry, we are inclined to believe that he could not have stopped his car in any shorter space than approximately some 65 feet, but here the facts reveal that it was misty raining, which would naturally cause the vehicle of the defendant to skid and would possibly require a greater distance within which to stop than under normal and good atmospheric circumstances.
That being the case, we are therefore inclined to believe that the defendant’s position in their pleadings is correct that is, that the plantiff walked from behind the Duplessis automobile into the east bound vehicle of the defendant and was struck by the left front fender of the defendant’s car in the south lane of traffic, and that the accident did not take place in the open. From the facts as above related, we therefore come to the conclusion that the accident or impact took place nearer the intersection of Eighth and Pine Streets and approximately in front of the Boyter Esso Station and not in front of Larpenter’s Service Station as was found by the lower court. Defendant Gates stated that when he observed the plaintiff, he was just about six feet from him and that he appeared as a blur. Nevertheless, he cut his steering wheel and put on his brakes. It is to be remembered that the plaintiff was crossing the street in the block and not at the intersection or at the regular place where pedestrians regularly cross. The defendant driver had no reason to expect or anticipate the presence of the pedestrian, or the plaintiff in this case, in crossing in the block or stepping from the rear of the Duplessis’ car. Nevertheless, immediately after the defendant driver was able to discover and did discover the presence of plaintiff, he did all that he could to avoid the accident. 1 Therefore, from the record as established, we do not think that the plaintiff has shown any negligence on the part of the defendant *274 driver. The burden and responsibility of the plaintiff was to prove his case by a preponderance of evidence and this we think he has failed to carry out in the instant case.
Therefore for the above and foregoing reasons, the judgment of the lower court is annulled and reversed and plaintiff’s suit dismissed at his cost.
Judgment reversed.